## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
## www.flmb.uscourts.gov

| | |
|---|---|
| In re:<br><br>**SUMMIT-VIEW, LLC**,<br><br>Debtor.<br>───────────────────────────<br>**JANET L. DENLINGER** and **HARRY RYDER DENLINGER,** ,<br><br>Plaintiffs,<br><br>v.<br><br>**SUMMIT VIEW, LLC**, a Florida limited liability company, **DOUGLAS J. WEILAND**, an individual, **JES PROPERTIES  INC.**, a Florida corporation, **KEENE SERVICES, INC.,** a Florida corporation, **FLORIDA DESIGN CONSULTANTS, INC.**, a Florida corporation, **CITY OF DADE CITY**, a political subdivision of the State of Florida, and **SOUTHWEST FLORIDA WATER MANAGEMENT DISTRICT**, a political subdivision of the State of Florida,<br><br>Defendants.<br>─────────────────────────── | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:  8:19-bk-10111-MGW<br><br>Chapter 11<br><br><br><br><br><br><br><br><br> Adversary Case No. 8:19-ap-00610-MGW<br><br>Action for Damages, Injunction, and Declaratory Relief |

## THIRD AMENDED COMPLAINT[1]

Plaintiffs, Janet L. Denlinger and Harry Ryder Denlinger (together, "the Denlingers" or "Plaintiffs"), sue Defendants, (1) Summit View, LLC ("Summit-View"), (2) Douglas J.

---

[1] At a hearing on June 14, 2019 prior to the subject action being removed into Bankruptcy Court, the state circuit court dismissed in whole or in part nine counts of the Second Amended Complaint; the dismissal of four counts, either in whole or in part, was with prejudice.  Thus, the Denlingers will not be including within the third amended complaint the counts which were dismissed with prejudice.

Weiland ("Weiland"), (3) JES Properties, Inc. ("JES Properties"), (4) Keene Services, Inc. ("Keene-Services"), (5) Florida Design Consultants, Inc. ("FDC"), (6) the City of Dade City ("Dade-City"), and (7) the Southwest Florida Water Management District ("SWFWMD") (collectively, "Defendants") for damages, and equitable, injunctive, and declaratory relief, as laid out below.

## INTRODUCTION

1.    This action is brought against Defendants for their respective conduct in the open-pit mining on Summit-View's 135-acre property, disfiguring the land abutting the Denlingers' southern boundary with an almost 40-foot deep mining pit posing a dangerous and imminent threat to the public health, safety, and welfare, depriving the Denlingers' 167 acres of land of water flow, violating the Denlingers' and other neighboring landowners' property rights and peaceful enjoyment of the Denlingers' 167 acres, and violating various regulatory and zoning standards.  The Denlingers now seek, inter alia, declaratory relief, injunctive relief and damages for negligence, nuisance, and unreasonable land use, for abatement because Summit-View's property is a common law nuisance and a statutory public nuisance, and for declaratory relief that rezoning, permits, and authorizations for Summit-View's 135 acres have expired.

2.    Summit-View's "mining pit" (sometimes referred to as "the borrow pit" or "Summit-View's pit") harms the Denlingers and their 167 acres by depriving the Denlingers' 167 acres of underground and surface water flow, depressing the value of the Denlingers' adjoining 167 acres, and interfering with the use, enjoyment, and development of the Denlingers' adjoining 167 acres. Moreover, the mining pit directly injures the boundary conditions, buffers, stormwater runoff, aquifer preservation, and groundwater protection. The nearly 40-foot vertical downward slope within the mining pit

is so steep and so near the Denlingers' property that it may destabilize granular soils with the potential of eventually causing soil from the Denlingers' land to slide into Summit-View's pit.

3.      Dade-City and SWFWMD, respectively, approved Summit-View's rezoning and permit applications for a residential subdivision. Yet, Summit-View's efforts on its 135 acres have been exclusively to operate and expand the mining pit, which is inherently and overtly incompatible with developing a subdivision on Summit-View's 135 acres.

4.      There has been absolutely no progress toward developing Summit-View's subdivision. Instead, Summit-View's 135 acres lay mutilated by the 40-foot-deep moonscape pit carved into the landscape by Summit-View's open-pit mining. The below figure reflects the relevant properties as they are situated.



## PARTIES

### Plaintiffs

5.      Janet L. Denlinger is a New Jersey resident who, together with her brother Harry Ryder Denlinger, owns approximately 167 acres of real property in Pasco County (tax parcel ID 32-24-21-0000-00200-0000).  Ms. Denlinger lived throughout her childhood on the Denlingers' 167 acres prior to going away to the University of Florida. The Denlingers' 167 acres share their southern property line with the northern property line of real property owned by Summit-View.

6.      Harry Ryder Denlinger is a resident of Polk County, Florida, who, together with his sister Janet L. Denlinger, owns approximately 167 acres of real property in Pasco County (tax parcel ID 32-24-21-0000-00200-0000).  The Denlingers' 167 acres share their southern property line with the northern property line of real property owned by Summit-View.

### Defendants

7.      Summit-View is a Florida registered LLC with its registered agent located in Palm Harbor, FL, that owns 135 acres of land located at 13350 Happy Hill Road, Dade-City, Florida 33525, tax parcel ID 32-24-21-0000-00300-0000, which shares its northern property line with the southern property line of the Denlingers' property.   Summit-View never has had any employees.  Rather, "all operational persons" in connection with Summit-View's dirt mining operations on Summit-View's 135 acres are employees of JES Properties, which manages the dirt mining operations on Summit-View's 135 acres, or are employees or subcontractors of Keene Services, which excavates, loads onto dumptrucks, and removes dirt in connection Summit-View's dirt mining operations on Summit-View's 135 acres.   Summit-View has contracted with JES Properties to provide

Summit-View "management services" and to oversee dirt mining operations on Summit-View's 135 acres.

8.    <u>Weiland</u> is a resident of Pinellas County, and through a series of LLC's, is the true owner of Summit-View, which acts under his direction and control.  Weiland is the managing member for Summit-View.  The Florida Secretary of State lists Weiland as JES Properties' president, secretary, treasurer, director and registered agent.  Weiland personally provides "general oversight" of the dirt mining operations on Summit-View's 135 acres.

9.    <u>JES Properties</u> is a Florida corporation.  The Florida Secretary of State lists Weiland as JES' president, secretary, treasurer, director and registered agent.  JES Properties has contracted (and continues to contract) to provide Summit-View "all operational persons" and to provide "management services" in connection with Summit-View's dirt mining operations on Summit-View's 135 acres,  One engineer with JES Properties works almost fulltime in connection with Summit-View's dirt mining operations on Summit-View's 135 acres.   Summit-View has never had any employees.

10.    <u>Keene-Services</u> is a Florida for-profit corporation, with its principal place of business in Brooksville, Florida.  Keene-Services does business in Pasco County, Florida, such business including overseeing and managing on Summit-View's behalf the mining operations occurring on Summit-View's 135 acres.   Summit-View contracted Keene Services "to excavate [on Summit-View's 135 acres] based on instructions and permits" Summit-View had obtained from Dade-City and the SWFWMD, and to "excavate and run site operations consistent with requirements of [Dade-City and the SWFWMD]."

11.    FDC is a Florida corporation with its principal place of business in Pasco County, Florida. FDC is a professional civil engineering firm staffed with civil engineers registered and licensed in the State of Florida. FDC provides various services, including, but not limited to, feasibility studies, commercial development services, subdivision design, applying to obtain and obtaining governmental approvals and permits for construction projects, providing zoning and regulation advice, and land use planning and development.  FDC planned, designed, applied for permits, obtained permits, and oversaw construction for the residential subdivision/dirt mining operations on Summit-View's 135 acres here.

12.    Dade-City is a political subdivision of the State of Florida, and  issued permits and approvals that have allowed Summit-View to establish and operate the illegal and harmful open-pit mine on Summit-View's 135 acres.   Dade-City may be sued in its name pursuant to Florida Statutes § 125.15.

13.    SWFWMD is an agency within Florida Statutes § 120.52(1)(b), and is a public corporation created by Chapter 61-691, Laws of Florida, and operated under Chapter 373, Florida Statutes. SWFWMD is a regulatory agency created by the State of Florida to conserve, protect, manage and control the water resources within SWFWMD's geographic boundaries.

## JURISDICTION AND VENUE

14.    The Circuit Court for the Sixth Judicial Circuit in and for Pasco County, Florida, had subject matter jurisdiction pursuant to Florida Statutes § 26.012(2)(a) because the Denlingers are seeking damages that exceed $30,000, exclusive of interest, costs, and attorney's fees, and pursuant to Florida Statutes § 26.012(2)(c) because the Denlingers are seeking injunctive relief.

15.    The Circuit Court for the Sixth Judicial Circuit in and for Pasco County, Florida, also had subject matter jurisdiction pursuant to Florida Statutes § 86.011 because the Denlingers are seeking a declaratory judgment.

16.    Venue was proper in the Circuit Court for the Sixth Judicial Circuit in and for Pasco County, Florida, pursuant to Florida Statutes §§ 47.011, 47.041, and 47.051 because the causes of action accrued in Pasco County, because the property involved in litigation is located in Pasco County, and/or because FDC has, or usually keeps, an office for transaction of its customary business in Pasco County.

17.    On October 24, 2019, Summit-View filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, which has been assigned Case No. 8:19-bk-10111-MGW (Chapter 11).

18.    On December 19, 2019, the Denlingers timely and properly removed the action which the Denlingers had filed in the Circuit Court for the Sixth Judicial Circuit against, among other defendants, Summit-View, Weiland, JES Properties, Keene Services, FDC, Dade-City, and SWFWMD, to the United States Bankruptcy Court for the Middle District of Florida, Tampa Division.  The removed action has been assigned Case No. 8:19-ap-00610-MGW (Chapter 11).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS
### Dade-City passes zoning and the project begins

19.    On February 8, 2005, the Dade-City City Commission passed Ordinance 2005-0868, which contained Dade-City's land development regulations and development review procedures (hereafter "2005 LDRs").  A copy of Dade-City's 2005 LDRs is attached hereto and incorporated herein as Exhibit A.

20.    On March 21, 2005, Summit-View acquired title to approximately 135 acres at 13350 Happy Hill Road, Dade-City, Florida (hereafter "Subject Property" or "Summit-View's 135 acres") by a General Warranty Deed recorded in Book 6286, Page 1293, of the Official Records of Pasco County, Florida.   A copy of the deed is attached hereto and incorporated herein as Exhibit B.

21.    On October 25, 2005, Summit-View submitted an application to rezone the Subject Property from its then-existing zoning district of Pasco County Zoning Category A-C Agricultural District to Dade-City zoning category PD-HI.  Summit-View requested the zoning change to allow development of a residential subdivision on its 135 acres.[2]

22.    Dade-City Zoning Category PD-HI was a planned development zoning district described in Section 6.2 of Article VI, "Special District Regulations," within Dade-City's Zoning Code.  Dade-City's PD-HI zoning district applied to large scale residential developments and related uses or services, such as what Summit-View proposed.   A copy of Article VI excerpts related to PD-HI zoning is attached hereto and incorporated herein as Exhibit C.

23.    On January 10, 2006, the Dade-City City Commission passed Ordinance 2005-0905, which rezoned the Subject Property to PD-HI.  A copy of Ordinance 2005-0905 is attached hereto and incorporated herein as Exhibit D.

24.    Ordinance 2005-0905 described Summit-View's PD-HI planned development project as a residential housing development, which would allow the construction of four hundred six (406) residential lots on the Subject Property.  Ordinance 2005-0905 was conditioned upon Summit-View complying with certain conditions.

[2] Dade-City annexed the 135 acres on April 23, 2002. However, Dade-City did not rezone the property to a Dade-City Zoning District until adoption of Ordinance 2005-0905.

25.     Condition 9 of Ordinance 2005-0905 required that <u>all stormwater</u> <u>management and drainage plans would be. . .subject to SWFWMD's review and</u> <u>permitting before construction could commence</u>.  Condition 9 also required Summit-View to submit a site grading plan regarding its stormwater management and drainage plans to Dade-City for review prior to seeking approval of its construction plans.

26.     Condition 11 of Ordinance 2005-0905 approved development to proceed in accordance with the Preliminary Development Plan previously submitted to Dade-City and dated March 16, 2005.

27.     According to the 2005 LDRs, Summit-View's planned development project was a Class IV development.  As a Class IV development, Summit-View was required to obtain approval of a preliminary plan prior to beginning development, which it did by inclusion of Condition 11 in Ordinance 2005-0905.

28.     The 2005 LDRs contained a deadline to complete development of a Class IV development.  The deadline to complete a Class IV development was based upon the date the Class IV development received approval of its preliminary plan and was determined as follows:

> For Class IV developments, fifty (50) percent of the project must be platted or where no plat is required, fifty (50) percent of the infrastructure must be constructed or fifty (50) percent of the Building Permits of the project must be issued within six (6) years of the original preliminary plan or preliminary site plan approval.  Further 100 percent of the project must be platted or where no plat is required, 100 percent of the infrastructure must be constructed or 100 percent of the Building Permits for the project must be issued within ten (10) years of the original preliminary plan or preliminary site plan approval.  **<u>In the event that the developer does not comply with this provision, the preliminary plans or preliminary site plans, stormwater management plan and report, and construction plans related to the uncompleted portion of the preliminary plan or preliminary site plan shall be deemed void and approval shall be deemed withdrawn</u>**, unless an extension has

**been obtained from the Development Review Committee prior to the expiration of any of the above time limits**.  **Any extension shall be applied for at least sixty (60) days prior to expiration of any of the above time limits.**  [Emphasis supplied]

### Summit-View's approvals from SWFWMD

29.    With the adoption of Ordinance 2005-0905, Summit-View was ready to begin clearing and grading the Subject Property for its development project.  In March 2006, Summit-View applied to SWFWMD for an ERP General Construction Permit. Weiland, through Summit-View, proposed to "construct a stabilized haul road and mine on-site soils as shown on the enclosed Construction Plans."

30.    On September 19, 2006, the SWFWMD issued ERP General Construction Permit No. 44030817.000 (hereafter "the SWFWMD Permit") to Summit-View.  The SWFWMD Permit required submission of a Mass Grading Plan, an Erosion Protection Plan and other documentation.  The SWFWMD Permit had an expiration date of September 19, 2011, which has been periodically extended at Summit-View's request.  A copy of the SWFWMD Permit is attached hereto and incorporated herein as Exhibit E.

31.    The SWFWMD Permit authorized a new surface water management system to "serve a 97.85-acre mining operation within a future residential subdivision."  The newly permitted surface water management system would allow the mining and excavation of dirt to construct 10 on-line retention ponds to be located on the Subject Property.

### Summit-View submits plats and construction plans to Dade-City

32.    Prior to or during July 2007, Summit-View submitted a preliminary plat for Phase 1 of the development project to Dade-City for review and approval.  Also, in July 2007, Dade-City and Summit-View executed a Utility Agreement related to the provision of water and wastewater for the development project.

33.     In August 2007, Dade-City approved Summit-View's preliminary subdivision plat and construction plans for Phase 1 of the project.  The construction plans included the Mass Grading Plan and related plans that were previously submitted and approved by the SWFWMD as part of the review and approval of the SWFWMD Permit.

### Summit-View delays

34.     On February 10, 2009, Dade-City approved the final subdivision plat for Phase 1.  Summit-View never recorded this subdivision plat even though it was required to meet the LDR zoning timeline.

35.     By this time, the Utility Service Agreement that was previously approved had also expired.  On April 6, 2009, Dade-City agreed to a construction plan for Phase 1 of the development project contingent on the execution of a new Utility Service Agreement, compliance with Pasco County's right-of-way use permit, and Dade-City's approval of proposed fire truck turn radii and hydraulic calculations.  A mass grading bond/performance guarantee was also required prior to further dirt removal.

36.     Just four days prior to this, on April 2, 2009, Summit-View had filed the first of two petitions for bankruptcy pursuant to Chapter 11.

37.     By 2011, no significant construction work had begun, and Summit-View had made no progress toward its LDR deadlines (see paragraph 28 above). In order to avoid expiration of its zoning, Summit-View requested an extension of its Class IV development project.  On January 4, 2012, Dade-City's Community Development Director sent a letter granting Summit-View the requested two-year extension for construction of the project. The letter of January 4, 2012, advised that "[t]he new expiration date for platting 50% of

the lots is now November 14, 2015." A copy of the letter of January 4, 2012, is attached hereto and incorporated herein as Exhibit F.

38.     An article in the Tampa Bay Times, initially published on June 27, 2009 and updated on March 23, 2013, suggested, consistently with Summit-View's bankruptcy, that Summit-View had encountered financial difficulties and that the sale of dirt from the Subject Property (rather than the development and/or sale of residential subdivision lots or of residential property) was Summit-View's only asset. A copy of the article is attached hereto and incorporated herein as Exhibit G.

**Expiration of zoning and**
**beginning of unauthorized for-profit mining**

39.     Years would pass without Summit-View making any progress on the construction of the subdivision.

40.     On July 16, 2014, Dade-City's Community Development Director wrote Summit-View to update Summit-View on the status of its approvals. <u>Dade-City's letter of July 16, 2014 stated that Summit-View's construction plans conditionally approved on April 5, 2009 had expired due to Summit-View's failure to execute a Utility Service Agreement with Dade-City and to show compliance with Pasco County's right-of-way permit. "The previously submitted construction plans for Summit View Phase I are void due to failure to complete the contingent requirements."</u> A copy of the letter of July 16, 2014, is attached hereto and incorporated herein as Exhibit H.

41.     Dade-City's letter of July 16, 2014 also informed Summit-View that Dade-City considered the proposed plat for Phase 1 void since it was never recorded. "Since the plat was never recorded in the public records, it is also considered void by the City."

A copy of the letter of July 16, 2014, is attached hereto and incorporated herein as Exhibit H.

42.    Dade-City's letter of July 16, 2014 further stated that "no construction plans have received final approval, no plats have been recorded and no construction has begun.  In addition, dirt removal has been sporadic and the mass grading plan for the project is nowhere near completion."  A copy of the letter of July 16, 2014, is attached hereto and incorporated herein as Exhibit H.

43.    Dade-City's Community Development Director also advised in the letter of July 16, 2014 that "the only current approvals remaining for the Summit View property are the initial PUD zoning/preliminary plan and the mass grading plan."  A copy of the letter of July 16, 2014, is attached hereto and incorporated herein as Exhibit H.

44.    Summit-View's "initial PUD zoning/preliminary plan" was due to expire on November 14, 2015.  Submit View submitted no request for an extension of Summit-View's zoning approval in Ordinance 2005-0905 despite the fact that Dade-City in its letter of January 4, 2012, had notified Summit-View of the expiration date.   The zoning for the Subject Property returned to Pasco County A-C Agricultural as of November 15, 2015. Because Ordinance 2005-0905 contained Summit-View's PD-HI rezoning approval and its Preliminary Development Plan, the Mass Grading Plan was now also expired.

45.    The purpose of Pasco County A-C Agricultural District zoning is to "preserve the rural and open character of various lands within the County.  These lands are agricultural lands; sites of vital, natural water resource functions; areas with highly productive, natural plant and animal communities; and areas with valuable topographic and/or subsurface features, all of which are necessary to sustain and enhance the quality

of life in the County.  Those uses will be allowed which are compatible with these overall objectives."  A copy of the Pasco County A-C Agricultural District zoning regulation is attached hereto and incorporated herein as Exhibit I.

46.    Chapter 500, Section 503.2 of the Pasco County zoning regulation lists permitted uses in the Pasco County A-C Agricultural District.  Mining and the extraction of dirt are not identified as permitted uses in Pasco County A-C Agricultural District.

47.    Despite the fact that Pasco County A-C Agricultural District zoning was in effect as of November 15, 2015, and rather than seeking approvals from Dade-City to proceed with its residential housing development project on the Subject Property, Summit-View continued to excavate, transport and sell dirt from the Subject Property, thereby creating a large, unauthorized borrow pit on the Subject Property.

48.    An example of Summit View's business of hauling and selling dirt from the Subject Property was its contract with Locust Branch, LLC, which was entered into on or about April 15, 2015 and terminated July 13, 2016.  The contract was for the sale and removal of 1,000,000 cubic yards of dirt at $2.30 per cubic yard and at $4.45 per cubic yard as a hauling fee.

### Dade-City's enforcement actions against Summit-View

49.    In late 2017, owners of properties adjacent and near the Subject Property, brought to Dade-City's attention Summit-View's continued excavation and transport of dirt from the Subject Property.  Dade-City's Community Development Director and Dade-City's City Manager undertook further review of Dade-City's records to determine the status of the development project.

50.    Dade-City's Community Development Director met with neighboring property owners, who had expressed a concern regarding the then-current condition of

the Subject Property and the noise and truck traffic from the dirt-hauling operation.  <u>A preliminary determination was made that the Subject Property's current zoning (of Pasco County A-C, Agricultural District) did not allow dirt hauling or a mining operation</u>.  Meanwhile, Summit-View continued to mine dirt from the Subject Property.

51.    On March 22, 2018, the Dade-City's City Attorney wrote a letter to Summit View indicating "that <u>all development approvals for this project have expired, including Ordinance 2005-0905 [which had rezoned the Subject Property from Pasco County A-C to PD-HI]</u>."  Dade-City's City Attorney also requested Summit-View to provide no later than March 26, 2018, any documents that would allow a determination to be made that Summit-View's development approvals had not expired. Upon information and belief, Summit-View provided no such documents in accordance with deadline of March 26, 2018, or otherwise to date.  A copy of the City Attorney's letter of March 22, 2018, is attached hereto and incorporated herein as Exhibit J.

52.    On March 27, 2018, Dade-City's Community Development Director formally notified Summit-View that "<u>all development approvals for the Summit View project are expired, including but not limited to Ordinance 2005-0905</u>."  The letter of March 27, 2018, further advised Summit-View that "[t]<u>he current zoning for the property where the Summit View project is located is Pasco County A-C Agricultural District</u> and all future use of the property must be consistent with the uses authorized by that zoning designation."  Dade-City's Community Development Director also informed Summit-View that, in the event it intended to attempt to rezone Summit-Views  135 acres to a different zoning category than Pasco County A-C Agricultural District, an application was required along with

supporting documentation and fees as provided in the 2014 LDRs.  A copy of the letter of March 27, 2018, is attached and incorporated herein as Exhibit K.

53.    On April 9, 2018, Dade-City received another code enforcement complaint concerning unpermitted dirt mining on the Subject Property.  A copy of the code enforcement complaint is attached hereto and incorporated herein as Exhibit L.

54.    On April 10, 2018, Dade-City's Code Enforcement Officer visited the Subject Property, observing continued mining on the Subject Property.  The Code Enforcement Officer observed a dirt-for-sale sign near the entrance to the Subject Property and reviewed the Pasco County Property Appraiser's website which indicated that the Subject Property was being used for mining.  Dade-City's Code Enforcement Officer obtained a copy of Dade-City's Community Development Director's letter of March 27, 2018 and a copy of Pasco County's A-C Agricultural District zoning district regulations, and thereafter concluded that mining and the excavation of dirt from the Subject Property was not a permitted land use, and that a violation of Dade-City's 2014 LDRs had occurred and was continuing to occur.

55.    On April 10, 2018, Dade-City's Code Enforcement Officer also posted a "Stop Work Order Notice" on the Subject Property and continued preparation of a code enforcement citation against Summit-View.

### Dade-City's lawsuit against Summit-View, Weiland and JES Properties

56.    On April 19, 2018, Dade-City filed a Verified Complaint for injunctive relief against Summit-View, Weiland, and JES Properties to stop the unauthorized dirt mining from the Subject Property. Dade-City filed the complaint in the Circuit Court for the Sixth Judicial Circuit in Pasco County (Case No. 2018-CA-001137). William "Billy" Poe, Jr., as Dade-City's then City Manager, verified "the facts set forth [in the Verified Complaint as]

true and correct to the best of [his] personal knowledge and the business records" of Dade-City.  A copy of Dade-City's Verified Complaint of April 19, 2018, is attached and incorporated hereto as Exhibit M.

57.    Within Dade-City's Verified Complaint of April 19, 2018, the then City Manager for Dade-City verified, inter alia, that Summit View's mining operations "present a serious threat to the public health, safety, and welfare of the residents of Dade-City" (paragraph 1 of the Verified Complaint, Exhibit M hereto); that "[t]he zoning for the Subject Property returned to Pasco County A-C Agriculture as of November 15, 2015" (paragraph 38 of Exhibit M hereto); that "[b]ecause Ordinance 2005-0905 contained Summit View's PD-HI zoning approval and its Preliminary Development Plan, the mass grading plan was now also expired" (paragraph. 38 of Exhibit M hereto); that "Pasco County A-C Agriculture District zoning was in effect as of November 15, 2015" (paragraph 41 of Exhibit M hereto); that "[m]ining and the extraction of dirt is not identified as a permitted use in Pasco County A-C, Agricultural District" (paragraph 40 of Exhibit M hereto); that in late 2017 or early 2018 "[a] preliminary determination was made that the Subject Property's current zoning [did not] allow dirt hauling or a mining operation" (paragraph 46 of Exhibit M hereto); that Dade-City's City Attorney sent her letter of March 22, 2018, to Summit-View that "all development approvals for this project have expired, including Ordinance 2005-0905 [which had rezoned the Subject Property from Pasco County A-C to PD-HI]" (paragraph. 47 of Exhibit M hereto); that Dade-City's Community Development Director sent his letter of March 27, 2018, to Summit-View that "all development approvals for the Summit View project are expired, including but not limited to Ordinance 2005-0905" (paragraph 48 of Exhibit M hereto); that Dade-City's Code Enforcement Officer "concluded that mining and

extraction of dirt from the Subject Property was not a permitted land use and that a violation of [Dade-City's] 2014 LDRs had occurred" (paragraph 52 of Exhibit M hereto); that Summit-View's dirt mining is creating harms which are "both irreparable and continuing in nature" (paragraph. 61 of Exhibit M hereto); that Summit-View has "no legal right to continue operation of a borrow pit on the Subject Property" because "[a]ll of its land use approvals allowing it to extract dirt to create a residential housing development expired on November 15, 2015" (paragraph 67 of Exhibit M hereto); and that if Summit-View fails to restore the borrow pit Dade-City would be "left with a borrow pit in a residential area" (paragraph 70 of Exhibit M hereto).

### Denlingers' lawsuit against Summit-View, Weiland, JES Properties, Keene-Services, FDC, Dade-City, and the SWFWMD

58.     As April 24, 2018, the Denlingers were unaware that Dade-City had five days earlier on April 19, 2018, filed the Verified Complaint against Summit-View, Weiland, and JES Properties to enjoin the unauthorized dirt mining on the Subject Property.

59.     On April 24, 2018, the Denlingers thus filed a 23-page complaint in the Circuit Court for the Sixth Judicial Circuit in and for Pasco County to, inter alia, require Dade-City and the SWFWMD to enforce ordinances, regulations, and permit conditions against Summit-View, Weiland, and JES Properties, and to enjoin Summit-View, Weiland, JES Properties, Keene-Services and FDC from continuing to illegally dirt mine from the Subject Property.

60.     On May 23, 2018, an attorney who had been provided by the insurance carrier for Dade-City, entered an appearance to defend Dade-City against the Denlingers' action which had been filed April 24, 2018.

61.   The action which had been filed April 24, 2018, would eventually be removed to this Court once Summit-View had filed its second bankruptcy petition on October 24, 2019.

**Summit-View's Bert Harris Claim and Settlement with Dade-City**

62.   On May 11, 2018, Summit-View filed a claim pursuant to the Florida Land Use Law and Environmental Dispute Resolution Act, Florida Statutes § 70.51, against Dade-City ("Summit-View's Bert Harris Claim"). On May 30, 2018, J. Michael Shea, one of the attorneys representing the Denlingers, wrote the City Attorney and Darrin Quam, one of the attorneys representing Summit-View, concerning Summit-View's Bert Harris Claim.   Mr. Shea's email of May 30, 2018, read in part,

We understand [Summit-View and Dade-City are] availing themselves of FS 70.51.  We want to be clear that our clients, the Denlingers and Valdez, as adjacent property owners want to be included in those proceeding[s].  While we do not believe this statute [applies] to the facts in this case, never the less [the Denlingers and Mr. Valdez] want to be included in any proceedings that may take place as your clients property known as Summit View and conducted under FS 70.51.

We assume [Summit-View] has filed with Dade-City a request to proceed under FS 70.51.   We request a copy of that request. . . .

Under § (5)(b) of the statute, a governmental entity with whom a request has been filed shall also serve a copy of the request for relief by United States mail or by hand delivery to:

'Owners of real property contiguous to the owner's property at the address on the latest county tax roll.  We will be happy to receive those notices for both the Denlingers and Valdez, please forward them to me. . . .'

By copy of this email, we are request[ing] the City Attorney of Dade-City [to] include us on any list they have of Owners of real property contiguous to. . .[Summit-View's] property. . . .

The statute in § (8) provides the special magistrate may conduct a hearing.  We assume a hearing is going to be taking place and request notice of the time and place of any hearing on this project. . . .

> We understand the statute in § (15)(a) provides the special magistrate shall hold a hearing within 45 days after his or her receipt of the request for relief unless a different date is agreed by all the parties.  As stated above we have not received any notices and if this section is going to be adhered to, please let us know.  Section (b) of the same section calls for the special magistrate to provide notice of the place, date, and time of the hearing to all parties and any other persons who have requested such notice at least 40 days prior to the hearing.   I assume and will rely on that to be so.

> The statute provides in § (16)(a) that fifteen days following of a request for relief, the governmental entity shall file a response to the request for relief with the special magistrate together with a copy to the owner.    I assume that time has passed and by a copy to the city attorney <u>request a copy of their response</u>. . . .

A copy of Mr. Shea's email of May 30, 2018, is incorporated and attached as Exhibit N hereto.

63.    Notwithstanding Mr. Shea's request for a hearing, for notice, and for public records, none was forthcoming.  Rather between May 30, 2018, and August 31, 2018, there was silence between Dade-City and Summit-View, on the one hand, and the Denlingers, on the other hand.

64.    While there was silence between the Dade-City and Summit-View, on the one hand, and the Denlingers, there was no silence between Dade-City and Summit-View.  Rather, Dade-City, through an attorney its insurer provided but with no approval from the Dade-City City Commission, "negotiated" a settlement agreement to resolve Summit-View's Bert Harris Claim and to resolve Dade-City's Verified Complaint against Summit-View, <u>all outside-the-government-in-the-sunshine, all outside any notice, and all outside any publicly-advertised hearing</u>.  As will be seen in the immediately-following paragraphs, rather than provide any notice before government action such as the City Commission's consideration of any settlement agreement,

 
- Dade-City's then City Manager signed a settlement agreement with Summit-View, Weiland, and JES Properties on August 31, 2018, changing Dade-City's positions on the Summit-View project and status 180 degrees,

- Dade-City's City Attorney filed on September 7, 2018, a notice of dismissal with prejudice in state circuit court of Dade-City's Verified Complaint,

- Dade-City's City Clerk published on Friday, September 7, 2018, the agenda for the City Commission meeting of Tuesday, September 11, 2018 (which listed the "Summit View settlement agreement" as the last item on a five-page agenda, and as a "noted item," rather than as an item for public hearing, for discussion, for approval, or for voting, and

- Dade-City's City Commission had no discussion whatsoever concerning the Summit-View settlement agreement at the City Commission of September 11, 2018, only a seconds-long mention of the Summit-View settlement agreement prior to adjourning the City Commission meeting.

65.    As the Denlingers have now learned, there was good reason why the City Commission never discussed the settlement agreement at the publicly-advertised City Commission meeting of September 11, 2018, to wit, the insurance attorney representing Dade-City had already "negotiated" the settlement agreement sometime prior to or on August 31, 2018, the then City Manager for Dade-City had signed the settlement agreement for Dade-City 11 days earlier on August 31, 2018, and the City Attorney for Dade-City had filed four days earlier on September 7, 2018, a dismissal with prejudice of Dade-City's Verified Complaint against Summit-View, Weiland, and JES Properties.

66.    On August 31, 2018, Dade-City purported to settle Dade-City's Verified Complaint against Summit-View, Weiland, and JES Properties.  The settlement agreement made representations and stipulations which were directly contrary to representations which Dade-City had consistently made in meetings, in correspondence with Summit-View, and in Dade-City's Verified Complaint against Summit-View, Weiland, and JES Properties.  Indeed, the same official from Dade-City, Mr. Poe, then the City

Manager, who had verified Dade-City's Verified Complaint on April 19, 2018, would sign on August 31, 2018, the settlement agreement containing representations and stipulations <u>directly contrary to those in Dade-City's Verified Complaint</u>.   A copy of the settlement agreement is attached hereto and incorporated herein as Exhibit O.

67.   Among the <u>representations and stipulations in the settlement agreement directly contrary to Dade-City's Verified Complaint</u> were

- "that the Summit View Project <u>is</u> subject to the terms, conditions and conditions of approval contained in Dade County Ordinance 2005-0905" as of August 31, 2018;

- that "the Preliminary Development Plan, also referred to as the Final Concept Plan for Summit View. . .<u>is valid and has not expired or lapsed</u>;"

- that "the Mass Grading Plan for the Summit View Project. . .<u>is valid" and has not expired</u>;

- that "the Phase I Final Subdivision Plat. . .<u>is valid and has not expired or lapsed</u>;" and

- that "the Construction Plan for the Summit View Project. . .which covers Phases I and II, <u>is valid and has not expired or lapsed</u>."

## **Conditions Precedent**

68.   All conditions precedent to filing this action have occurred, have been performed, have been waived, or have otherwise been satisfied.

## COUNT I

### DECLARATORY RELIEF UNDER FLORIDA STATUTES. § 86.201
**(Against Dade-City, Summit-View, Weiland, JES Properties, and Keene-Services)**
**(PD-HI Zoning, Existence of Plat, Preliminary Development Plan, Construction,**
**Mass Grading Plan, and All Other Development Approvals Have Expired)**

69.     Count I is an action for declaratory judgment concerning the existing zoning and approvals for the Subject Property.

70.     The Denlingers restate and incorporate by reference the allegations set forth in paragraphs 1 through 68 above.

71.     The Denlingers will itemize at least eight factual issues on which their views and Dade-City's views up until the settlement agreement of August 31, 2018, differ dramatically from Summit-View's, Weiland's, and JES Properties' views and from Dade-City's views in the settlement agreement of August 31, 2018.  See paragraphs 78 through 102 below.

72.     In light of Dade-City signing the settlement agreement of August 31, 2018, the Denlingers are in doubt as to their rights, status, powers or privileges in challenging the dirt mining which Summit-View is doing on the adjoining property to the Denlingers' 167 acres.

73.     The declarations being sought are not merely the giving of legal advice by the courts or answers to questions propounded from curiosity.

74.     A bona fide, actual, present need exists for the declarations being sought.

75.     The declarations deal with a present ascertained or ascertainable state of facts or present controversy.

76.   Some power, privilege or right of the Denlingers, of Summit-View, of Weiland, of JES Properties, or of Keene-Services is dependent upon the facts or law applicable to the facts.

77.   There exists some person or persons, including Summit-View, Weiland, JES Properties, or Keene-Services, who have or may have an actual, present, adverse and antagonistic interest in the subject matter of the declaration.  The antagonistic and adverse interests are all before the Court via proper process.

**Current Zoning: Pasco County A-C Agricultural District or Dade-City PD-HI**

78.   The Denlingers contend that the existing zoning for the Subject Property is Pasco County A-C Agricultural District.  See Dade-City's City Attorney's letter of March 22, 2018, to Summit-View, attached as Exhibit J to the Denlingers' third amended complaint, that "all development approvals for [Summit-View's] project have expired, including Ordinance 2005-0905," which rezoned the Subject Property from Pasco County A-C Agriculture to Dade-City PD-HI; Dade-City's letter of March 27, 2018, to Summit-View, attached as Exhibit K to the Denlingers' third amended complaint, that "all development approvals for the Summit View project are expired, including but not limited to Ordinance 2005-0905," and that "[t]he current zoning for the property where the Summit View project is located is Pasco County A-C Agricultural District;" paragraph 38 of Dade-City's Verified Complaint, attached as Exhibit M to the Denlingers' third amendment, that "[t]he zoning for the Subject Property returned to Pasco County A-C Agriculture as of November 15, 2015;" and paragraph 41 of Dade-City's Verified Complaint, attached as Exhibit M to the Denlingers' third amended complaint, that "Pasco County A-C Agriculture District was in effect as of November 15, 2015."

79.    The Denlingers are in doubt concerning what the contention of Dade-City is concerning current zoning.  ***Compare*** Dade-City's City Attorney's letter of March 22, 2018, to Summit-View, attached as Exhibit J to the Denlingers' third amended complaint, that "all development approvals for [Summit-View's] project have expired, including Ordinance 2005-0905," which rezoned the Subject Property from Pasco County A-C, Agricultural District to Dade-City PD-HI; Dade-City's letter of March 27, 2018, to Summit-View, attached as Exhibit K to the Denlingers' third amended complaint, that "[t]he current zoning for the property where the Summit-View project is located is Pasco County A-C Agricultural District;" paragraph 38 of Dade-City's Verified Complaint, attached as Exhibit M to the Denlingers' third amended complaint, that "[t]he zoning for the Subject Property returned to Pasco County A-C Agriculture as of November 15, 2015;" and paragraph 41 of Dade-City's verified complaint, attached as Exhibit M to the Denlingers' third amended complaint,  that "Pasco County A-C Agriculture District zoning was in effect as of November 15, 2015," ***with***   the settlement agreement of August 31, 2018, attached as Exhibit O to the Denlingers' third amended complaint, that "the Summit View project is subject to the terms, conditions and conditions of approval contained in Dade-City Ordinance 2005-0905."

80.    Upon information and belief, Summit-View, Weiland and JES Properties contend that the current zoning is Dade-City PD-HI.  See the settlement agreement of August 31, 2018, attached as Exhibit O to the Denlingers' third amended complaint, that "the Summit View project is subject to the terms, conditions and conditions of approval contained in Dade-City Ordinance 2005-0905."

**All Development Approvals**

81.    The Denlingers contend <u>that all development approvals for the Subject</u> <u>Property have expired</u>.  See Dade-City's City Attorney's letter of March 22, 2018, to Summit-View, attached as  Exhibit J to the Denlingers' third amended complaint, that "<u>all</u> <u>development approvals for [the Summit-View] project have expired, including Ordinance</u> <u>2005-0905</u>," the ordinance which included the rezoning from Pasco County A-C Agriculture to Dade-City PD-HI; Dade-City's letter of March 27, 2018, to Summit-View, attached as Exhibit K to the Denlingers' third amended complaint,  <u>that "all development</u> <u>approvals for the Summit View project are expired</u>, including but not limited to Ordinance 2005-0905;" paragraph 67 of Dade-City's Verified Complaint, attached as Exhibit M to the Denlingers' third amended complaint, that "[a]ll of [Summit-View's] land use approvals allowing it to extract dirt. . .expired on November 15, 2015."

82.    The Denlingers are in doubt concerning what the contention of Dade-City is concerning whether all development approvals have expired.  ***Compare*** the Dade-City City Attorney's letter of March 22, 2017, attached as Exhibit J to the Denlingers' third amended complaint, that "all development approvals for [the Summit View] project have expired, including Ordinance 2005-0905," the ordinance which included the rezoning from Pasco  County A-C, Agriculture, to Dade-City PD-HI, and Dade-City's letter of March 27, 2018, attached as Exhibit K to the Denlingers' third amended complaint, that "all development approvals for the Summit View project are expired;" and paragraph 67 of Dade-City's Verified Complaint, attached as Exhibit M to the Denlingers' third amended complaint, that "[a]ll of [Summit-View's] land use approvals allowing it to extract dirt. . .expired on November 15, 2015," ***with*** the settlement agreement of August 31, 2018,

attached as Exhibit O to the Denlingers' third amended complaint, that certain approvals remain valid.

83.      Upon information and belief, Summit-View, Weiland, and JES Properties contend that all development approvals for the Subject Property have not expired.  See the settlement agreement of August 31, 2018, attached as Exhibit O to the Denlingers' third amended complaint, that certain approvals remain valid.

### Preliminary Development Plan/Final Concept Plan

84.      The Denlingers contend that the preliminary development plan, also known as the final concept plan, for the Subject Property have become void.   See paragraph 81 above.

85.      The Denlingers are in doubt concerning what the contention of Dade-City is concerning the preliminary development plan or final concept plan.  See the settlement agreement of August 31, 2018, attached as Exhibit O to the Denlingers' third amended complaint, that "the preliminary development plan, also referred to as the final concept plan. . .is valid and has not expired or lapsed."

86.      Upon information and belief, Summit-View, Weiland, and JES Properties contend that the preliminary development plan or concept plan has not become void. ***Compare*** paragraph 81 above ***with*** the settlement agreement of August 31, 2018, attached as Exhibit P to the third amended complaint, that "the preliminary development plan, also referred to as the final concept plan. . . is valid and has not expired or lapsed."

### Plat of February 10, 2009

87.      The Denlingers contend that the plat of February 10, 2009, for the Subject Property, is void.  See Dade-City's letter of July 16, 2014, to Summit-View, attached as

Exhibit H to the Denlingers' third amended complaint, that "[s]ince the plat was never recorded in the public records, it is. . .considered void by the City."

88.     The Denlingers are in doubt concerning what the contention of Dade-City is concerning the plat of February 10, 2009.  ***Compare*** Dade-City's letter of July 16, 2014, to Summit-View, attached as Exhibit H to the Denlingers' third amended complaint, that "[s]ince the plat was never recorded in the public records, it is. . .considered void by the City," ***with*** the settlement agreement of August 31, 2018, attached as Exhibit O to the Denlingers' third amended complaint, that "the Phase I Final Subdivision Plat. . .is valid and has not expired or lapsed."

89.     Upon information and belief, Summit-View, Weiland, and JES Properties contend that the plat of February 10, 2009, has not become void.  See the settlement agreement of August 31, 2018, attached as Exhibit O to the Denlingers' third amended complaint, that "the Phase I Final Subdivision Plat. . .is valid and has not expired or lapsed."

## Preliminary plans, preliminary site plans, stormwater management plans, construction plans

90.     The Denlingers contend that the preliminary plans, preliminary site plans, stormwater management plans, and construction plans for the Subject Property, are void. See paragraph 56 and 57 above.

91.     The Denlingers are in doubt concerning what the contention of Dade-City is concerning the plat of February 10, 2009.  ***Compare*** paragraphs 56 and 57 above ***with*** the settlement agreement of August 31, 2018, attached as Exhibit O to the Denlingers' third amended complaint.

92.     Upon information and belief, Summit-View, Weiland, and JES Properties contend that the preliminary plans, preliminary site plans, stormwater management plans, and construction plans for the Subject Property have not become void.   See the settlement agreement of August 31, 2018, attached as Exhibit O to the Denlingers' third amended complaint.

### Mass Grading Plan

93.     The Denlingers contend that the Mass Grading -Plan for the Subject Property, has expired.   See paragraph 38 of Dade-City's Verified Complaint that "the mass grading plan was now also expired."  .

94.     The Denlingers are in doubt concerning what the contention of Dade-City is concerning whether the -Mass Grading -Plan has expired.   ***Compare*** paragraph 38 of Dade-City's Verified Complaint, attached as Exhibit M to the Denlingers' third amended complaint, that "the mass grading plan was now also expired" ***with*** the settlement agreement of August 31, 2018, attached as Exhibit O to the Denlingers' third amended complaint, that "the Mass Grading Plan. . .is valid"

95.     Upon information and belief, Summit-View, Weiland, and JES Properties contend that the Mass Grading Plan for the Subject Property has not expired.    See the settlement agreement of August 31, 2018, attached as Exhibit attached as Exhibit O to the Denlinger's the third amended complaint, that "the Mass Grading Plan. . . is valid."

### Construction Plans

96.     The Denlingers contend that the construction plans for the Subject Property, have expired and have become void.  See, e.g., Dade-City's letter of July 16, 2014, to Summit View (attached as Exhibit H to the Denlingers' third amended complaint)

that "[t]he previously submitted construction plans for Summit-View Phase I are void due to failure to complete the contingent requirements."   .

97.     The Denlingers are in doubt concerning what the contention of Dade-City is concerning whether the construction plans for the Subject Property have expired and have become void.   ***Compare*** Dade-City's letter of July 16, 2014, to Summit-View (attached as Exhibit H to the Denlingers' third amended complaint) that "[t]he previously submitted construction plans for Summit View Phase I are void," ***with*** the settlement agreement of August 31, 2019, attached as Exhibit O to the Denlingers' third amended complaint, that "the Construction Plan for the Summit View Project. . .which covers Phases I and II, is valid and has not expired or lapsed."

98.     Upon information and belief, Summit-View, Weiland, and JES Properties contend that the construction plans the Subject Property have not expired and have not become void.   See the settlement agreement of August 31, 2018, attached as Exhibit O to the Denlingers' third amended complaint, that "the Construction Plan for the Summit View Project. . .which covers Phases I and II, is valid and has not expired or lapsed."

## Settlement Agreement

99.     The Denlingers contend that the settlement agreement was procedurally improper in that it was not processed or approved properly and, thus, the settlement agreement is "invalid, "null," and "void."   The settlement agreement of August 31, 2018, is "invalid," "null," and "void," because, inter alia,

- Municipal contracts, such as a settlement agreement, must strictly comply with the underlying charter and ordinance.

- Section 2.01 of the Dade-City Charter provides that "[a]ll powers of the City shall be vested in the City Commission except as otherwise provided by law

or the Charter. . . .An act of the City Commission shall be defined as the affirmative vote of at least three (3) members of the Commission."

- Section 3.03 of the Dade-City Charter, "Powers and Duties of the City Manager," specifies 15 duties for the City Manager, but none of those authorize the City Manager to enter into or sign settlement agreements for Dade-City.

- Where the City Commission wanted to authorize the City Manager to approve or enter contracts for Dade-City, the City Commission knew how to do so. See, e.g., Dade-City Code 2-512 (manager may approve contract extension of competitively-awarded contracts if city commission included authorization for subsequent contract extension); Dade-City Code 5-517(2) (manager may approve certain emergency purchases); Dade-City Code 2-523 (manager may sign up to $25,000 in change orders); Dade-City Code 2-510(f)(10) (city manager may approve certain contract extensions).

100.    The Denlingers also contend that settlement agreement of August 31, 2018, is "invalid," "null," and "void," because, inter alia,

- The Denlingers were deprived of their rights of notice and the opportunity to be heard under the Dade-City Code in connection with the zoning, land use, and permit decisions which were purportedly determined in the settlement agreement.

- The Denlingers were deprived of their rights of notice and the opportunity to be heard under the Bert Harris Act in connection with the zoning, land use, and permit decisions which were purportedly determined in the settlement agreement.

- Using the settlement agreement to make zoning, land use, and permit decisions without notice to the affected public, including the Denlingers, and the opportunity to be heard violates "contract zoning" or similar principles.

- The Denlingers were deprived of procedural due process rights of notice and to be heard under the Florida and United States Constitutions in connection with the zoning, land use, and permit decisions which were purportedly determined in the settlement agreement.

101.    Presumably, Dade-City will contend that the settlement agreement was processed properly and is "valid."  See Mr. Scarritt's argument for Dade-City at the hearing in this Court on February 26, 2020.

102.    Presumably, Summit-View, Weiland, and JES Properties also will contend that the settlement agreement was processed properly and is "valid."  See Mr. Cremer's argument for Summit-View at the hearing in this Court on February 26, 2020.

WHEREFORE, the Denlingers hereby request this Court to issue declaratory relief stating the following as a matter of law:

(a)    that the zoning for the Subject Property became Pasco County A-C Agriculture District as of November 15, 2015;

(b)    that the current zoning for the Subject Property is Pasco County A-C;

(c)    that all development approvals for the Subject Property have expired;

(d)    that the preliminary development plan/final concept plan for the Subject Property has become void;

(e)    that the plat of February 10, 2009, has become void;

(f)    that preliminary plans, preliminary site plans, stormwater management plans, and construction plans for the Subject Property have expired and become void;

(g)    that the Mass Grading Plan for the Subject Property has expired;

(h)    that construction plans for the Subject Property have expired and become void; and

(i)    that apart from substantively failing to recognize that all development approvals, including zoning, had expired and become void, the settlement agreement of August 31, 2018, is "null," "void," and "invalid" for being procedurally improper, for depriving the Denlingers of notice and the opportunity to be heard in violation of the Dade-City Code, the Bert Harris Act, and the Due Process Clauses of the Florida and United States Constitutions..

## COUNT II

**DECLARATORY RELIEF UNDER FLA. STAT. § 86.201**
**(Against Dade-City, SWFWMD, Summit-View, Weiland, and JES Properties)**

**(Whether the 2.2 million cubic yards Summit-View may remove are "in situ" or "compacted" cubic yards, on the one hand, or are "truckload" or "fluffed" cubic yards, on the other hand)**

103.   Count II is an action for declaratory judgment concerning whether the 2,214,641 cubic yards of "[e]xcess earthwork to be trucked offsite for disposal" under the SWFWMD Permit and the approved Mass Grading Plan are "in situ" or "compacted" cubic yards, on the one hand, or are "truckload" or "fluffed" cubic yards, on the other hand.

104.   The Denlingers restate and incorporate by reference the allegations set forth in paragraphs 1 through 70 above and in paragraphs 73 through 77 above.

105.   On September 19, 2006, the SWFWMD issued the SWFWMD Permit, which incorporates the Mass Grading Plan.  The approved Mass Grading Plan for the SWFWMD Permit provided that the "excess earthwork to be trucked offsite for disposal" was 2,214,641 cubic yards.

106.   Summit-View claims that the 2,214,641 cubic yards should be construed as closer to three million cubic yards because the 2,214,641 cubic yards was the number of "compacted" or "in situ" cubic yards which could be removed from the ground, and when "compacted" or "in situ" dirt or sand is removed from the ground it expands with a "fluff" factor of approximately 25 percent, thereby increasing the 2,214,641 cubic yards to approximately three million "fluffed" or "truckload" cubic yards which could be loaded into dump trucks and removed offsite.

107.   The Denlingers claim that the 2,214,641 cubic yards are "fluffed" or "truckload" cubic yards because, inter alia,

- The approved Mass Grading Plan lists the 2,214,641 cubic yards as the amount "to be trucked offsite for disposal," Rather than the amount "to be excavated from the ground."

- Comparing the preexisting topography for the Subject Property prior to Summit-View removing any soil with the topographies which would be in accordance with the completed construction plan indicates that the cubic yards of "in situ" or "compacted" dirt and soil to be removed are approximately 1.7 million cubic yards, rather than approximately 2.2 million cubic yards.

- Summit-View in negotiating with Pasco County concerning a right-of-way permit and fee to remove dirt or sand from the Subject Property represented that approximately 2,200,000 cubic yards (not 3 million cubic yards) of dirt or sand were or would be removed from the Subject Property.

WHEREFORE, the Denlingers hereby request this Court to issue declaratory relief stating the SWFWMD Permit and approved Mass Grading Plan authorizes Summit-View to remove up to 2,214,641 cubic yards of "fluffed" or "truckload" earthwork, and such other and further relief as the Court may deem appropriate.

## COUNT III

### PUBLIC NUISANCE
### FLORIDA STATUTES § 373.433
### (Against Summit-View, Weiland, JES Properties, Keene-Services, and SWFWMD, as a statutorily-necessary party)

108. This is an action against Summit-View, Weiland, JES Properties, and Keene-Services for abatement and declaration of a public nuisance under Chapter 373, Florida Statutes, the Florida Water Resources Act of 1972 ("the Water Resources Act").

109. SWFWMD also is named as a defendant in the abatement action because Florida Statutes § 373,433, "Abatement," provides that "[t]he governing board [SWFWMD]. . .shall be a necessary party to any such suit."

110. The Denlingers restate and incorporate by reference the allegations set forth in paragraphs 1 through 68 above.

111. Florida Statutes § 373.433, "Abatement," provides that "[a]ny stormwater management system, dam, impoundment, reservoir, appurtenant work, or works which

violates the laws of this state or violates the standards of the governing board or the department **shall** be declared a public nuisance.  The operation of such stormwater management system, dam, impoundment, reservoir, appurtenant work, or works may be enjoined by suit. . .by a private citizen. . . ."  Summit-View, Weiland, JES Properties, and Keene Services are in violation of the SWFWMD Permit under Florida Statutes § 373.430, which states in pertinent part, "[i]t shall be a violation of this part, and it shall be prohibited for any person: to cause pollution, as defined in s. 403.031(7), except as otherwise provided in this part, so as to harm or injure human health or welfare, animal, plant, or aquatic life or property. . . **to violate or fail to comply with any rule, regulation, order, or permit adopted or issued by a water management district**. . . and to knowingly make any false statement, representation, or certification in any application, record, report, plan, or other document filed or required to be maintained under this part."

112.   The Water Resources Act provides that the dams, basins, ponds, impoundments, storm waters and all other waters on the Subject Property, and its neighbors, are subject to the regulations of the Water Resources Act and are not under any known exemption.  Florida Statutes § 373.023.

113.   The Summit-View property stormwater management system does not comply with the requirements of the Water Resources Act for the following reasons, among other reasons:

(a)   Summit-View's, Weiland's, JES Properties' and Keene Services' construction  is not in compliance with the SWFWMD Permit because,  *inter alia*, the construction fails to adhere to the approved construction plans including the Mass Grading Plan, erosion protection plan, and stormwater prevention plan;

(b)   Summit-View's, Weiland's, JES Properties' and Keene Services' construction fails to comply with the SWFWMD Permit because the stormwater

management system exists in an as-built condition that is incompatible with a future residential subdivision;

(c)     Summit-View's, Weiland's, JES Properties' and Keene Services' construction fails to comply with the SWFWMD Permit which requires 10 on-site drainage ponds. To date, no drainage ponds have been properly constructed, and the three ponds which have been constructed are incomplete or have breached or "blown out" due to faulty engineering and construction;

(d)     The SWFWMD Permit allows no off-site discharge and requires that the 10 planned drainage ponds contain sufficient storage for the 100-year, 24-hour storm event. However, the ponds have failed, causing catastrophic stormwater discharge, silt discharge, and pollution to neighboring properties;

(e)     The 40-foot cliff on the edge of the open mining pit fails to conform to approved construction plans and is a threat of injury to human life and property;

(f)     The digging of the borrow pit is unauthorized by the SWFWMD Permit in that the mining activities are not being conducted toward development of a residential subdivision, but instead are being conducted to facilitate the for-profit sale of the dirt; and

(g)     The surface area and depth of the mining have grown so large that significant off-site impacts have been caused, and continue to be caused, such that the previously enjoyed water flow to the Duck Lake Basin (north) on the Denlingers' property has been diverted into the East Zephyrhills Basin (south), causing drought to the Duck Lake Basin and flooding with pollution in the East Zephyrhills Basin.

114.   This Court should declare a "public nuisance" and enjoin the operation of the stormwater management system in accordance with Florida Statutes § 373.433.

115.   Where a statute, such as Florida Statutes § 373.433 authorizes an injunction, it is not necessary for a plaintiff to show the standards for generally obtaining an injunction, but if it were necessary the Denlingers would demonstrate that an injunction here would comply with the standards for a court issuing an injunction.

116.   The Denlingers have a clear legal right.

117.   The Denlingers have no adequate remedy at law.

118.   Enjoining the operation of the stormwater management system would avoid irreparable harm and would be in accordance with the public interest as reflected in Florida Statutes § 373.433.

119.   The Denlingers have been required to retain the undersigned attorneys to bring the statutory action pursuant to Florida Statutes § 373.433.

120.   The Denlingers have agreed to pay the undersigned attorneys a reasonable attorney's fee in bringing the statutory action pursuant to Florida Statutes § 373.44.

121.   The Denlingers may recover costs and attorney's fees for bringing this action. Florida Statutes § 373.136.

WHEREFORE, the Denlingers hereby this Court to declare the stormwater management system at the Summit-View project to be a public nuisance, to enjoin the operation of the stormwater management system at the Summit-View property, to restore the Subject Property to what it would have been had it been constructed in accordance with the SWFWMD Permit, and to abate the imminent public danger caused by the borrow pit.   The Denlingers further pray that the Court award the Denlingers their costs and attorneys' fees incurred in bringing this action and award the Denlingers such further and other relief as the Court may deem appropriate.

## COUNT IV

**PRIVATE NUISANCE**
**(Against Summit View, Weiland, JES Properties, and Keene-Services)**

122.   This is a cause of action for damages against Summit View, Weiland, JES Properties, and Keene-Services, and to enjoin Summit View's, Weiland's, JES Properties', and Keene-Services (should Keene-Services continue to be involved should dirt mining operations resume)  dirt mining operations as a continuing nuisance.

123.   The Denlingers restate and incorporate by reference the allegations set forth in paragraphs 1 through 68 above.

124.   Summit View's, Weiland's, JES Properties', and/or Keene-Services' dirt mining operations have disturbed (and continue to disturb) the Denlingers' free use, possession, and enjoyment of the Denlingers' property and have decreased the value of the Denlingers' property in that, inter alia, the dirt mining operations have created a 40-foot deep cliff near the boundary of the Denlingers' property and have interfered with the stormwater and underground water flow onto the Denlingers' property.

125.   The Denlingers have a clear, legal right to be free of a nuisance, such as Summit View's, Weiland's, JES Properties', and Keene-Services' dirt mining operations.

126.   Unless enjoined, the Denlingers will suffer irreparable injury.

127.   The Denlingers do not have an adequate remedy at law.

128.   The requested injunction would not be contrary to the interest of the public generally.

129.   An injunction is appropriate to preserve the status quo and to restore the dirt mine to where it was prior to the tortious conduct beginning because real property, such as the Denlingers' land, is unique, because courts have often granted injunctions to

prevent damage to real property, such as the Denlingers' lands here, and because courts have often granted injunctions against nuisances, such as Summit-View's, Weiland's, JES Properties', and Keene-Services' dirt mining operations here.

130.   The private nuisance has damaged the Denlingers by depreciating the property value of the Denlingers' 167 acres.  A property appraiser has estimated that the loss in value to the Denlingers' 167 acres to be approximately $2,000,000.00.

WHEREFORE, the Denlingers pray for damages, for injunctive relief, for costs, and for such other and further relief as the Court may deem appropriate against Summit-View, against Weiland, against JES Properties, and against Keene-Services.

### COUNT V
### UNREASONABLE USE OF LAND
### (Against Summit View)

131.   This is a cause of action for damages and to enjoin Summit View's sand mining operations as an unreasonable use of land unreasonably creating a 40-foot drop-off along the Denlingers' southern border and altering the volume and intensity of water flowing onto the Denlingers' 167 acres.

132.   The Denlingers restate and incorporate the allegations set forth in paragraphs 1 through 68 above.

133.   Summit View's dirt mining operations have created a 40-foot drop off near the southern boundary of the Denlingers' lands, thereby interfering with the Denlingers' ability to enjoy and use their lands, especially portions of their lands near the 40-foot drop offs.

134.   Summit View's dirt mining operations have unreasonably interfered with the flow of surface and underground waters onto the Denlingers' lands.

135.   Summit View's interference with the flow of surface and underground waters has been unreasonable, <u>inter alia</u>, because Summit View has failed to comply with the SWFWMD Permit, and because had Summit View constructed the residential subdivision as it represented it would and as it was permitted to, water flow would continue to replenish the lake on the Denlingers' property.

136.   Summit View's unreasonable use has damaged the Denlingers, including dewatering of the Denlingers' lake and wetlands, and also diminishing the value of the Denlingers' 167 acres, and by creating an unsafe and attractive nuisance near the border of the Denlingers' 167 acres with Summit-View's 135 acres.

137.   A prohibitory injunction prohibiting Summit-View from continuing to dirt mine would be in the public interest and would avoid future harm to the Denlingers.

138.   A mandatory injunction requiring Summit View to restore the dirt mining operations to permit historic water flow and to permit the Denlingers to use and enjoy their property would be in the public interest.

139.   Unless Summit View were enjoined to cease its dirt mining operations and to restore the dirt mining operations and the natural water flow, the Denlingers will continue to suffer irreparable injury, including the periodic drying of the Denlingers' wetlands and lake.

140.   An injunction is appropriate to preserve the status quo and to restore the dirt mine to where it was prior to the tortious conduct beginning because real property, such as the Denlingers' land, is unique, because courts have often granted injunctions to prevent damage to real property, such as the Denlingers' lands here, and because courts

have often granted injunctions against unreasonable uses of lands, such as Summit-View's dirt mining operations here.

141.    The Denlingers do not have an adequate remedy at law.

142.    The requested injunction would not be contrary to the interest of the public generally.

WHEREFORE, the Denlingers pray for damages and injunctive relief, costs,  and such further relief as the Court may deem appropriate against Summit-View.

## COUNT VI

**NEGLIGENCE**
**(Against Summit-View, Weiland, JES Properties, and Keene-Services)**

143.    Count VI is a cause of action against Summit-View, Weiland, JES Properties, and Keene-Services for negligence.

144.    The Denlingers restate and incorporate by reference the allegations set forth in paragraphs 1 through 68 above.

145.    Summit-View, Weiland, JES Properties, and Keene-Services had a duty to the Denlingers not to unreasonably harm the Denlingers' property in connection with the dirt mining on Summit-View's 135 acres.

146.    Summit-View's, Weiland's, JES Properties', and Keene Services' illegal open-pit mining operation has breached that duty and been the direct and proximate cause for myriad harms and damages to the Denlingers' property.

147.    Summit-View, Weiland, JES Properties, and Keene Services have disregarded any notion of Best Management Practices as required by SWFWMD and Dade-City permitting.

148.   Summit-View, Weiland, JES Properties, and Keene-Services have operated with a pattern of non-conformance with Dade-City and with the SWFWMD Permit.

149.   Erosion control and silt-screening were promised in Summit-View's application for the SWFWMD Permit.

150.   Summit-View, Weiland, JES Properties, and Keene-Services installed no erosion control measures whatsoever until after the commencement of the Denlingers' subject action in state circuit court on April 24, 2018.

151.   Summit-View, Weiland, JES Properties, and/or Keene Services did not install silt screening on the southern boundary of Summit-View's 135 acres until the summer of 2018, and, the silt screening failed, resulting in flooding to neighboring properties.

152.   As the contractor charged with the oversight, management and performance of the mining operation, Keene-Services owed adjoining land landowners, including the Denlingers, a duty to perform these acts in a manner that does not damage immediately adjoining lands. Keene-Services failed to follow industry standards and breached their duty of care to the Denlingers and other adjoining landowners.

153.   Keene-Services, under the guise of subdivision permit(s), constructed a 40-foot-deep crater across 135 acres to facilitate the strip-mining operation and allow Summit-View to sell more than two million cubic yards of fill dirt to various customers.

154.   Keene-Services breached its duty of care to adjoining property owners, including the Denlingers, by failing to follow the construction plans and specifications for the project.

155.   Keene-Services further breached its duties and standard of care by failing to ensure that any erosion control methods were used at the project during the mining operation. Keene-Services' failure resulted in substantial water and soil runoff and irreparable injury to adjoining properties.

156.   Given the size and scope of the project, as well as the immediate proximity of the project to the Denlingers' property, Keene-Services should have reasonably foreseen that the Denlingers (as well as other adjoining property owners) could and would be injured if Keene-Services performed its duties in a negligent manner.

157.   Keene-Services further negligently performed its duties so as to potentially deprive the Denlingers' property of its natural lateral support, thereby resulting in a potentially weakened boundary structure and ongoing erosion of the Denlingers' property destabilizing granular soils with the potential of causing soil from the Denlingers' land to slide into Summit-View's pit.

158.   Given the immediate proximity of the project to the Denlingers' property, Keene-Services could have and should have reasonably foreseen the loss of lateral support to the Denlingers' land, which shares a common boundary with the land owned by Summit-View.

159.   The Denlingers have suffered damages due to Summit-View's, Weiland's, JES Properties', and Keene-Services' negligence, including their failure to comply with the

SWFWMD Permit.  Those damages include loss of water flow to the Denlingers' property.

potential deprivation of the natural lateral support for their land by Summit-View and

Keene-Services, reduced property value, loss of aesthetics, and loss of buffers.

WHEREFORE, the Denlingers request that this Court award the Denlingers

damages, costs, and such other relief as the Court deems appropriate against

Summit-View, Weiland, JES Properties, and/or Keene-Services.

**COUNT VII**
**NEGLIGENCE**
**(Against FDC)**

160.    The Denlingers herein restate and incorporate by reference the allegations

set forth in paragraphs 1-68 above

161.    This is an action for negligence against FDC.

162.    FDC, through its registered, licensed engineers, participated in the

design, permitting, and development of the purported subdivision by Summit View,

by Weiland, and by JES Properties.

163.    FDC was negligent in failing to prepare proper and adequate plans and

specifications for the project and in failing to properly supervise ongoing construction

and dirt mining at the project.

164.    FDC knew or in the exercise of due care should have known, that

construction of the purported subdivision, as designed, was not feasible without

substantial damage to neighboring landowners, including the Denlingers. FDC failed

to follow known industry standards, and exercise reasonable engineering standards

in designing the plans and specifications for the project.

165.    In connection with its design of the purported subdivision, FDC failed to observe the standard of care used by similar professionals in the community under similar circumstances.

166.    FDC failed to design and allow for the same pre-design/pre-construction water runoff to neighboring properties.  As a result of FDC's design, during and after construction, the southern adjoining property has received and will continue to receive excessive water runoff and soil deposits, while the northern adjoining property, primarily the Denlingers' 167 acres, has incurred and will continue to incur a substantial loss of surface and underground water.

167.    FDC negligently designed the project such that it substantially deprives the Denlingers' property of its natural lateral support, resulting in a weakened boundary structure and erosion of the Denlingers' property destabilizing granular soils with the potential of causing soil from the Denlingers' land to slide into Summit-View's pit.

168.    Summit-View's, Weiland's, and JES Properties' design is flawed regarding riparian water flow affecting the Denlingers, as the Denlingers have lost substantial sheet water runoff they previously enjoyed.

169.    Prior to Summit-View's, Weiland's, JES Properties' and Keene-Services' mining operation, the Denlingers enjoyed the natural runoff from 43.63 acres of Summit-View's land with no historic impacts.  According to the approved design, Summit-View will discharge runoff from 2.29 acres of natural land, resulting in a 95% reduction in natural flow onto the Denlingers' land.

170.    Additionally, the approval reveals zero runoff onto Denlingers' land up to the 100 year/10-day rainfall event from a proposed Summit View pond, and Summit-View pond No. 70 discharges Denlingers' pre-developed runoff only after the 100-year/10-day event.

171.    Summit-View, Weiland, and JES Properties used flawed methodology for its on-site pond design. Proposed ponds reflect soil percolation characteristics taken from shallow borings and assumed they would be valid for deeper pond bottoms. There is no engineering credibility for calculated pond volume recovery periods.

172.    FDC further breached its applicable standard of care by failing to properly supervise and oversee construction of the project. As a result, no subdivision has been built as designed, and has further damaged the Denlingers' 167 acres.

173.    Summit-View, Weiland, JES Properties, and Keene Services continued excavating and removing dirt, even at times when required permits had expired. FDC had a duty to notify appropriate personnel of the expiration of any permit(s) and to ensure the project did not continue without requisite approval. FDC failed in this duty.

174.    FDC further breached its duty to ensure that any development and construction was consistent with the approved construction plans. FDC failed to ensure that the interim drainage basins/ponds were constructed in a timely manner and consistent with the construction plans.

175.    Given the size and scope of the project, as well as the proximity of the project to Denlingers' 167 acres, FDC should have reasonably foreseen that Denlingers (as well as other adjoining property owners) could and would be injured if FDC performed its duties in a negligent manner.

176.   As a direct and proximate result of FDC's negligence, the Denlingers have suffered damages, including loss of water flow to the Denlingers' property, potential deprivation of the natural lateral support for their land by Summit-View and Keene-Services, reduced property value, loss of aesthetics, and loss of buffers.

177.   WHEREFORE, the Denlingers demand judgment against FDC for actual and compensatory damages, interest, costs, and such further relief as this Court deems just and proper.

## COUNT VIII

### FLORIDA STATUTES § 403.412 ENVIRONMENTAL COMPLAINT
### (Against Summit-View, Weiland, and JES Properties)

178.   Count VIII is a "placeholder count" to advise the Court that the Denlingers have prepared a one count complaint against Summit-View, Weiland, and JES Properties pursuant to the Florida Environmental Protection Act of 1971, Florida Statutes § 403.412,, and will be serving it contemporaneously with the Denlingers' third amendment complaint on the SWFWMD in accordance Florida Statutes § 403.412 to see if the matter can be resolved.   Florida Statutes § 403.412 provides that the claim pursuant to the Florida Environmental Protection Act of 1971 may not be filed in court until 30 days after it is provided to the SWFWMD.

## COUNT IX

**FLORIDA STATUTES § 403.412 ENVIRONMENTAL COMPLAINT**
**(Against SWFWMD)**

179.   Count X is a "placeholder count" to advise the Court that the Denlingers have prepared a one count complaint the SWFWMD pursuant to the Florida Environmental Protection Act of 1971, Florida Statutes § 403.412, and will be serving it contemporaneously with the Denlingers' third amendment complaint on the SWFWMD in accordance Florida Statutes § 403.412 to see if the matter can be resolved.   Florida Statutes § 403.412 provides that the claim pursuant to the Florida Environmental Protection Act of 1971 may not be filed in court until 30 days after it is provided to the SWFWMD.

Respectfully submitted,

/s/ *John J. Lamoureux*

John J. Lamoureux, Esq.
Florida Bar No. 835218
Donald E. Hemke, Esq.
Florida Bar No. 305057
Carlton Fields, P.A.
P. O. Box 3239
Tampa, FL  33601-3239
Telephone (813) 223-7000
Facsimile (813) 229-4133
Primary: dhemke@carltonfields.com
        jlamoureux@carltonfields.com
Secondary: bwoolard@carltonfields.com
        delliott@carltonfields.com
**Co-Counsel for Janel L. Denlinger and**
**for Harry Ryder Denlinger**

and

J. Michael Shea
Florida Bar No. 120989

6301 Bayshore Blvd.
Telephone: (813) 310-8057
Facsimile: (813) 288-1927
Primary: mike@jmichaelshea.com
Secondary: jmarkett@smlctampa.org
**Co-Counsel for Janet L. Denlinger
and Harry Ryder Denlinger**

and

Joseph F. Southron
Florida Bar No. 0122109
Four Rivers Law Firm, PLLC
400 N Ashley Dr., Suite 1900
Tampa, FL, 33602
Telephone: (813) 773-5105
Facsimile: (813) 773-5103
Primary: joe@fourriverslaw.com
Secondary: eservice@fourriverslaw.com
Tertiary: lindsey@fourriverslaw.com
**Co-Counsel for Janet L. Denlinger
and Harry Ryder Denlinger**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 23, 2020, I electronically filed the foregoing Denlingers' third amended complaint against Summit View, LLC, Weiland, JES Properties, Keene Services, Florida Design Consultants, Dade City, and SWFWMD, thereby serving all registered users in this case, and by U.S. Mail to all parties on the attached Local Rule 1007-2 matrix who do not have the + symbol next to the name.

*/s/ John J. Lamoureux*